**FILED**

FEB 17 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A mobile-home residence located at address:
135 Harewood Rd., Murfreesboro North Carolina
(As described in Attachment A hereto)

Case No. 2:23-mj-1010-RN

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A mobile-home residence located at address: 135 Harewood Rd., Murfreesboro North Carolina, See Attachmetn A.

located in the **Eastern** District of **North Carolina**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit in Support of Application for Search Warrant

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Rodney McCarter
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 over the telephone.

Date: February 17, 2023

*Judge's signature*

City and state: Raleigh, NC

Robert T. Numbers II, United States Magistrate Judge
*Printed name and title*

FEB 17 2023
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: A Mobile Home Located At Address 135 Harewood Rd., Murfreesboro North Carolina | Case No. 2:23-mj-1010-RN |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Rodney McCarter, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states:

**A.     INTRODUCTION**

1.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the FBI and have been since 2019. Prior to my employment with the FBI, I was a police officer in the state of Virginia for fourteen years. I have received training at the FBI Basic Agent Training Academy in Quantico, Virginia, where I have received instructions in criminal law, criminal procedure, and investigative techniques. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics and the organization of drug conspiracies. In the course of conducting or participating in narcotics investigations, I have been involved in the use of different investigative techniques including, as most relevant here, conducting surveillance, analyzing telephone pen register and caller identification system data, and preparing and executing search warrants involving drug-related offenses.

BK     Case 2:23-mj-01010-RN     Document 1     Filed 02/17/23     Page 2 of 17

2. The SUBJECT RESIDENCE, identified in Attachment A, was identified by FBI agents on or around the months of July 2021.

3. As set forth more fully below, there is probable cause to believe that the SUBJECT RESIDENCE will contain cocaine, contrary to Title 21, United States Code, Sections 841 (a)(1) and (b)(1)(C), in violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute a controlled substance) (hereinafter the "Specified Federal Offense"), or other items illegally possessed, or property designed, intended and used in committing the Specified Federal Offense.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter nor does it identify all information known by the Government concerning this investigation. Except as otherwise indicated, the actions, conversations, and statements of others identified in this Affidavit are reported in substance and in part. Similarly, where events are described with reference to dates and times the events should be read as having occurred on or about or at or about the dated and time referenced.

## B. FACTS OF THE INVESTIGATION

5. Monte ELEY (hereinafter "ELEY") has been the subject of an FBI investigation since early 2021. Investigators learned from Confidential Sources (hereinafter "CSs"), who have personal knowledge and whose information has been deemed reliable and credible, that ELEY is a member of a violent drug trafficking organization (hereinafter "DTO") and has sold and distributed cocaine and crack cocaine in and around Hertford County, NC for years and continues to do so. More specifically, ELEY's criminal history consists of distributing cocaine, possessing controlled substances, unlawfully possessing a handgun, all activity occurring within the District of North Carolina. ELEY and other members of the DTO are known by law enforcement agents to control the trade of narcotics in the vicinity of 135 Harewood, Murfreesboro, NC, and other locations in Hertford County NC. Members of the DTO are known to be involved in wholesale narcotics distribution as well as street sales for approximately 10 years. Some members of the DTO are known gang members and are connected to other regional gang members throughout Hertford County, NC and surrounding areas. Specifically, ELEY has been identified as a member of the "Blood Gang." The DTO is known to be involved in the distribution of illegal narcotics, including cocaine, and crack cocaine, aggravated assaults, attempted homicides, illegal possession of

firearms, and money laundering. Members of the DTO utilize multiple locations and vehicles to facilitate and conceal their drug trafficking activities. Members of the DTO utilize firearms to intimidate rival groups, protect their drug supply, and protect money they obtain from drug distribution. Based on my training and experience, I know that those involved in drug trafficking commonly utilize vehicles to store and transport narcotics as well as bulk cash obtained from the sale of narcotics. I know that the aforementioned bulk amounts of cash are maintained where the drug traffickers have ready access to them including the residences, they are using to conduct their drug trafficking businesses and using in furtherance of their attempts to avoid capture. Additionally, I know that drug traffickers often rent trailers to store bulk amounts of cash in an attempt to avoid both recognition by law enforcement and other rival individuals. Often times these residences are rented by third parties, in order to conceal the drug trafficker's direct connection to the residence and items located within the residence.

6. Law enforcement agents believe that members of the DTO use mobile telephones and other electronic devices to arrange and complete drug trafficking transactions, to communicate about drug trafficking, to set up meetings in order to obtain narcotics from their distributors, and to set up meetings in order to distribute narcotics to other members of the DTO. ELEY is known to use SUBJECT RESIDENCE to provide drugs to DTO distributors. It is also believed by law enforcement that ELEY uses SUBJECT RESIDENCE for the purpose of collecting money obtained from the sale of narcotics. At this time, law enforcement agents believe that ELEY resupplies other distributors upon request. Members of the DTO are known to use abandoned properties to hide and store narcotics. These areas and properties are used because they are difficult for law enforcements agents to surveille discretely.

7. During the investigation, law enforcement officers learned that ELEY operated open air drug sales from the Harewood residence. On or about September 1, 2021, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a confidential source (hereinafter "CS")

who was issued pre-recorded buy money of $1250.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY, a person who the CS identified as "Big 5", a known cocaine distributor Murfreesboro, NC.

8. On that morning, law enforcement officers observed CS place a phone call to ELEY requesting what your affiant knows to be approximately 1 ounce of cocaine. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY on Harewood road, both parties stayed in their vehicles. CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted through their respective driver's side windows, afterwards both parties left the location. Immediately after the sale, CS left the area and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers to include your affiant, recovered approximately 1 ounce of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

9. On or about September 9, 2021, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a confidential source CS who was issued pre-recorded buy money of $1250.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

10. On that morning, law enforcement officers observed CS place a phone call to ELEY, dialing number 252-209-1083, requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's driver's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 1

ounce of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

11. On or about September 17, 2021, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $1250.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

12. On that morning, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched from different surveillance locations as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's driver's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 1 ounce of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

13. On or about September 30, 2021, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $1850.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

14. On that morning, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched from different surveillance locations as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's driver's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law

enforcement officers at a predetermined location. Law enforcement officers recovered approximately 1.5 ounces of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

15. On or about February 2, 2022, law enforcement agents conducted a controlled purchase in the Harewood residence using a CS who was issued pre-recorded buy money of $1600.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

16. On that morning, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet around the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's passenger's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 37.9 grams of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

17. On or about February 10, 2022, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $2400.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

18. On that morning, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's passenger's side window on foot. Immediately

after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 57.8 grams of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

19. On or about March 2, 2022, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $1600.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

20. On that afternoon, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's passenger's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 42.5 grams of packaged off-white powdery substance along with audio/video recording devices. The substance inside was field tested and tested positive for the presence of cocaine.

21. On or about March 10, 2022, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $4800.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

22. On that afternoon, law enforcement officers observed CS place a phone call to ELEY requesting a meet for the possibly narcotics transaction. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence. ELEY exited the Harewood residence, CS and ELEY engaged in conversation, a hand to hand

exchange was conducted when ELEY approached CS's passenger's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 85.0 grams of packaged off-white powdery substance, and approximately 29.1 grams of an off-white rock like substance along with audio/video recording devices. The substances inside was field tested and tested positive for the presence of cocaine.

23. On or about March 30, 2022, law enforcement agents conducted a controlled purchase in the area of the Harewood residence using a CS who was issued pre-recorded buy money of $4800.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

24. On that afternoon, law enforcement officers observed CS place a phone call to ELEY requesting to meet for the possibly narcotics transaction involving the purchase 3 ounces of powered cocaine and 1 ounce of crack. The parties agreed to meet in the area of the Harewood residence in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Harewood residence, ELEY exited the residence, CS and ELEY engaged in conversation, a hand-to-hand exchange was conducted when ELEY approached CS's driver's side window on foot. Immediately after the sale, CS left the residence and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 84.9 grams of packaged off-white powdery substance, and approximately 29.0 grams of an off-white rock like substance along with audio/video recording devices. The substances inside was field tested and tested positive for the presence of cocaine.

25. On or about June 09, 2022, law enforcement agents conducted a controlled purchase in the area of the Cotton Gin Road using a CS who was issued pre-recorded buy money of $2400.00 and was instructed to purchase narcotics. The target of this controlled purchase was ELEY.

26. On that afternoon, law enforcement officers observed CS place a phone call to ELEY requesting to meet for the possibly narcotics transaction involving the purchase 1 ounces of powered cocaine and 1

ounce of crack. The parties agreed to meet in the area of the Cotton Gin Road in Murfreesboro, NC. Law enforcement officers watched as CS met ELEY at the Cotton Gin Road Location and both parties stayed in their respective vehicles. CS and ELEY engaged in conversation before a hand-to-hand exchange was conducted when ELEY approached CS's driver's side window. Immediately after the sale, CS left the area and met and debriefed with law enforcement officers at a predetermined location. Law enforcement officers recovered approximately 29.1 grams of packaged off-white powdery substance and approximately 28.9 grams of an off-white rock like substance along with audio/video recording devices. The substances inside were field tested and tested positive for the presence of cocaine.

27. As recently as late January, 2023, law enforcement agents obtain information ELEY was distributing cocaine product from his residence of 135 Harewood rd. Murfreesboro, NC. A source of information (SOI) stated ELEY had unknown quantities of crack and powder cocaine stored in his residence. This description was based off of personal observation from the individual providing the information to law enforcement. According to the SOI, ELEY was using his residence to store money and distribute powder cocaine and crack cocaine.

28. Further, law enforcement has performed additional surveillance on ELEY'S residence through February 14, 2023. Observations from the surveillance are consistent with the account(s) provided by the SOI regarding ongoing drug distribution. The surveillance included observations of multiple individuals driving to the residence where they stayed for a short time. Once there, the visitors would either go inside the residence for a few minutes before exiting and leaving, or, once a visitor arrived, ELEY would exit the residence, walk to the visitor's vehicle for a brief time before walking back inside the residence and the visitor would drive away. Multiple, short visits of this nature from different individuals is consistent with drug trafficking activity in my experience.

29. To date, CS has purchased approximately 534 grams of presumed powdered cocaine along with approximately 4 ounces of presumed crack cocaine from ELEY.

### C. Need for Search Warrant

30. Based on the above, I believe that ELEY uses the SUBJECT RESIDENCE to arrange drug transactions, conduct transactions, and store drugs and proceeds from narcotic transactions.

31. Based on the foregoing, there is probable cause to believe that obtaining the requested information will assist in locating evidence of the Specified Federal Offense, contraband, fruits of crime, or other items related to the Specified Federal Offense. Such evidence may include, but is not limited to, controlled substances, cellular telephones, articles of clothing, documents, and other items indicating the control/possession of the SUBJECT RESIDENCE, and United States currency.

32. For the reasons set out in this Affidavit, there is probable cause to believe that the Specified Federal Offense have been committed by ELEY and others known and unknown. Further, there is probable cause to believe that ELEY is using the SUBJECT RESIDENCE to commit the Specified Federal Offense.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

### D. CONCLUSION

33. Based upon the foregoing, I respectfully submit that probable cause exists to believe that the SUBJECT RESIDENCE, contains contraband, evidence, fruits or instrumentalities of crimes relating to the investigation of ELEY's involvement in drug trafficking.

34. I respectfully request, because of the sensitive nature of the ongoing investigation, and because this investigation is ongoing, that this Affidavit along with the Application, Warrant, and all other supporting documents be filed under seal. As noted above, providing public notice at this time regarding the seized items obtained from the search warrant would jeopardize the ongoing investigation by prematurely revealing its existence.

Rodney McCarter, Special Agent
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: February 17, 2023

Robert T. Numbers, II
United States Magistrate Judge

## ATTACHMENT A

## SUBJECT RESIDENCE

A white single wide trailer with a black roof, with an address of 135 Harewood road (hereinafter referred to as (SUBJECT RESIDENCE) Murfreesboro, North Carolina (NC).

The SUBJECT PREMISES includes all parts of the property, including the main structure, garage(s), storage structures, outbuildings, and curtilage, and all persons, vehicles, containers, compartments, or safes located on the property, whether locked or unlocked, where the items described in Attachment B (list of items to be seized) could be found.



# ATTACHMENT B

## DESCRIPTION OF EVIDENCE TO BE SEARCHED AND SEIZED

Evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 846 namely:

1. Any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations; or;

2. Any property designed for use, intended for use, or used in committing any subject violations.

3. Controlled Substances to include, but not limited to: cocaine, methamphetamine, fentanyl, heroin, marijuana.

4. Any items which tend to show ownership, dominion, or control of the property, records of illegal drug activity, documents, and photographs.

5. Drug paraphernalia and items used in manufacturing and distribution of illegal controlled substance to include but not limited to; digital and mechanical scales, measuring scales, measuring cups, razors, scissors, heat sources, precursors used in the controlled substance manufacturing, plastic bags and packaging materials.

6. U.S. Currency, financial instruments, precious metals, jewelry, and other items of value, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activity

7. Cellular telephones, and other forms of communication to include the correspondence by electronic messages pertaining to the sale and distribution of illegal narcotics.

8. Firearms, ammunition, and other forms of defense used to protect those involved in the sale and distribution of illegal narcotics.

9. Computers and computer related storage media including but not limited to hard drives, thumb drives, CD-R disks, flash media, memory sticks, iPods, PDA's, (Personal Digital Assistant), and other magnetic and/or optical recording media. The

graphic files and the data within these files related to the possession, sale and distribution of illegal controlled substances,

10. Financial records and other records or documents reflecting narcotics-trafficking activity, money laundering activity, or the disposition of narcotics proceeds, including, but not limited to, currency, financial instruments, stocks, bonds, jewelry, precious metals; bank checks; cashier's checks and receipts for such checks, Western Union receipts, money orders, money order receipts, credit cards, credit card records, pre-paid credit cards, green dot cards and documents relating thereto; vehicle registrations; real estate records; income tax returns and any documentation relating to the payment of any income tax, mail and contract mail carrier records, documentation and receipts relating to any safe deposit boxes and keys to safe deposit boxes; documentation and receipts relating to any storage facilities and keys to those storage facilities; devices capable of counting large sums of currency, other items of value or proceeds derived from the sale of illegal narcotics, and any other documents or evidence of financial transactions involving the receipt and disposition of the proceeds of illegal narcotics sales;

11. Records that identify other co-conspirators, including, but not limited to: address books, telephone books, telephone bills and records, telephones/cellphones and the numbers and other data stored within those telephones, and the numbers stored inside those devices, devices capable of recording incoming telephone numbers, and the numbers stored within those devices, records of telephone calls, whether recorded electronically or in writing, notes reflecting telephone, or papers which reflect names, addresses, and telephone numbers of suspected co-conspirators, photographs (to include still photos, negatives, movies, slides, video tapes, and undeveloped film); and audiotape recordings of conversations, including those made over telephone answering machines;

12. Documents or other records relating to court proceedings involving other coconspirators, including, but not limited to, charging documents and bail records;

13. Identification Documents;

14. Records of travel including, but not limited to, tickets, transportation schedules, passports, automobile rental records, notes and receipts related to travel, and motel/hotel receipts;

15. Indicia of occupancy, residency, rental, control, and/or ownership of the premises or other properties by ELEY, including keys, photographs, deeds, mortgages, lease

agreements, rental receipts, canceled checks, utility, cable, and telephone bills, titles, registration documents, and other documents;

16. Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, file cabinets and other types of containers, whether locked or unlocked, hidden compartments that may contain any of the foregoing; and the contents thereof, As used above, the terms "records" and "information, include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.